**KEMP JONES, LLP**
Don Springmeyer, Esq. (Nev. Bar #1021)
Christopher W. Mixson, Esq. (Nev. Bar. #10685)
Chad R. Aronson, Esq. (Nev. Bar #14471)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
d.springmeyer@kempjones.com
c.mixson@kempjones.com
c.aronson@kempjones.com

*Attorneys for Plaintiff Pyramid Lake Paiute Tribe*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PYRAMID LAKE PAIUTE TRIBE,<br><br>      Plaintiff,<br><br>      v.<br><br>DEBRA HAALAND, in her official capacity as Secretary of the United States Department of the Interior, and the UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>      Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff the Pyramid Lake Paiute Tribe ("Tribe") complains and alleges as follows:

### NATURE OF ACTION

The Tribe brings this suit asserting claims arising under federal law against Defendants for their failure to fulfill their obligations to the Tribe under the 1990 Truckee-Carson-Pyramid Lake Water Settlement Act, Title II of Pub. Law 101-618, 104 Stat. 2389, 2394 (1990) to manage certain water rights primarily for the purposes of conservation and recovery of the federally-listed threatened and endangered fishes within the Tribe's established Indian reservation.

### PARTIES

1. Plaintiff the Pyramid Lake Paiute Tribe ("Tribe") is duly recognized by the United States as the governing body of the Pyramid Lake Indian Reservation in Nevada. The Tribe is organized under Section 16 of the Indian Reorganization Act of 1934, 25 U.S.C. § 476, with a

1

Constitution and By-laws approved by the Secretary of the Interior.

2. Defendant Debra Haaland is named and sued in her official capacity as Secretary of the Department of the Interior ("Secretary").

3. Defendant United States Department of the Interior ("DOI") is an executive branch department of the United States, and is charged with managing the public lands and resources in accordance and in compliance with federal laws and regulations. This includes the responsibility for overseeing and directing how its agencies implement these federal laws and regulations. Under the federal Indian Trust responsibility, DOI has a fiduciary duty to the Tribe to exercise its authority to preserve and protect the Tribe's trust assets, which include Pyramid Lake and the Pyramid Lake fishery.

**JURISDICTION/VENUE**

4. The Court's jurisdiction over this action is conferred by 28 U.S.C. §§ 1331 (federal question), 1346 (United States as defendant), and 1362 (suits brought by Indian Tribes).

5. This Court has personal jurisdiction over Defendants because their acts and omissions that are the subject of this action have taken place, and continue to take place, in Nevada.

6. Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the Tribe's claims occurred in this judicial district and because the property that is the subject of this action is situated in this judicial district.

**GENERAL ALLEGATIONS**

**Pyramid Lake and its Fishery**

7. The Tribe has lived on the shores of Pyramid Lake in what is now Northern Nevada since time immemorial, and the Tribe's culture, identity, and religion are deeply interwoven with Pyramid Lake and the endemic fishes found there.

8. Pyramid Lake is a natural desert lake in the Great Basin region of Nevada and is the terminus of the Truckee River. Pyramid Lake and the lower 20 miles of the Truckee River are located within the exterior boundaries of the Pyramid Lake Indian Reservation. Other than

minimal natural precipitation and de minimus desert streams, Pyramid Lake's major and only source of water is inflow from the Truckee River.

9. Pyramid Lake is home to federally-listed fishes that are of the utmost cultural and spiritual importance to the Tribe and its people, specifically the endangered cui-ui and the threatened Lahontan cutthroat trout ("LCT"). These fishes are the focal point of the Tribe's history and culture—in the native Numu language, the Pyramid Lake people referred to themselves as *cui-ui ticutta*, the "cui-ui eaters."

10. The Pyramid Lake Indian Reservation was established in 1859, and confirmed on March 23, 1874 by an executive order signed by President Grant. The area was reserved for members of the Tribe primarily because it constituted their aboriginal home and because Pyramid Lake provided a large fishery which was the principal source of the Tribe's subsistence and livelihood. *See Nevada v. U.S.*, 463 U.S. 110, 115 (1983); *see also Churchill Cnty. v. Norton*, 276 F.3d 1060, 1066–67 (9th Cir. 2001).

11. In 1913, when the United States initiated an action to formally adjudicate the waters of the Truckee River in the federal *Orr Ditch* Decree, the United States failed to seek for the benefit of the Tribe sufficient water from the Truckee River system for the maintenance and preservation of Pyramid Lake or for the maintenance of the Truckee River and its tributaries as a natural spawning ground and nursery for fish, and instead only reserved water for other needs of the inhabitants of the Reservation such as irrigation, stock watering and domestic use. *See generally Nevada v. U.S.*, 463 U.S. 110 (1983).

12. The cui-ui was listed as endangered under the Endangered Species Act ("ESA") in 1967, and the LCT was listed as endangered in 1970 and then downgraded to threatened in 1975. *See* 32 Fed. Reg. 4001 (March 11, 1967) (listing cui-ui as endangered); 40 Fed. Reg. 29863, 29864 (July 16, 1975) (codified at 50 C.F.R. pt. 17) (listing LCT as threatened). Both species remain listed under the ESA to this day.

13. The primary reason for the plight of these important fish species was the diversion of water from the Truckee River upstream of the Reservation at Derby Dam to serve the Newlands Irrigation Project in the areas of Fernley and Fallon, Nevada. With construction of Derby Dam

completed by the U.S. Bureau of Reclamation in 1905, and commencement of diversions in 1906, over time the diversions of water from the Truckee River for the Newlands Project significantly reduced the size and lowered the surface elevation of water in Pyramid Lake because of inadequate water flows of the Truckee River into Pyramid Lake. The loss of water in the Truckee River and lowering of the surface elevation of Pyramid Lake caused the formation of an impassable delta at the mouth of the Truckee River which, in turn, had substantial, negative impacts on the cui-ui and LCT because they were not able to access their natural spawning grounds in the Truckee River.

14. The United States' Trust responsibilities to the Tribe, Pyramid Lake, and its endangered species were judicially confirmed in the case of *Pyramid Lake Paiute Tribe v. Morton*, which include the duty to ensure that all Truckee River water that is "not obligated by court decree or contract with the [Truckee-Carson Irrigation] District goes to Pyramid Lake." 354 F. Supp. 252, 256 (D.D.C. 1972).

15. Today, the preservation of the cui-ui and LCT, and Pyramid Lake generally, continues to depend primarily on the maintenance of sufficient flows of water in the Truckee River and ultimately into the Lake.

**Water Use at NAS-Fallon**

16. The U.S. Department of Navy ("Navy") owns and operates the Naval Air Station in Fallon, Nevada ("NAS-Fallon").

17. The Navy surrounded the runways at NAS-Fallon with irrigated alfalfa fields, for which the Navy used, in part, Truckee River water diverted at Derby Dam by the Truckee-Carson Irrigation District ("TCID") through the Truckee Canal to the Lahontan Reservoir in the Carson River basin as part of the Newlands Project.

18. The irrigation at NAS-Fallon was historically one of the larger single uses of water in the Newlands Project.

19. Decades ago, in light of the federal Trust responsibility to the Tribe and the mandates of the ESA, the Tribe began to object to the Navy's use of Truckee River water to irrigate water-thirsty alfalfa at NAS-Fallon because of its contribution to massive diversions of

water from the Truckee River. The Tribe sued the Navy in 1986, but the 9th Circuit Court of Appeals ruled against the Tribe and in favor of the Navy. *See Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410 (9th Cir. 1990).

20. However, the issue was ultimately resolved in the Tribe's favor through the 1990 Truckee-Carson-Pyramid Lake Water Settlement Act, Title II of Pub. Law 101-618 (1990) ("Settlement Act"), which set forth a pathway to achieve reductions of water use at NAS-Fallon in order to reduce diversions of water from the Truckee River for the purpose of conservation and recovery of the listed Pyramid Lake fishes.

**The Settlement Act**

21. Congress enacted the Settlement Act to generally "settle disputes over the rights to water from the Truckee and Carson Rivers and to address the environmental effects of overuse." *See e.g. Churchill Co. v. Norton*, 276 F.3d 1060, 1064 (9th Cir. 2001).

22. Title II of the Settlement Act states its purpose is to "fulfill the goals of the Endangered Species Act by promoting the enhancement and recovery of the Pyramid Lake fishery" and to "fulfill the Federal trust obligation to the Pyramid Lake Tribe." *See* Settlement Act, §§ 206(c)(6), (f).

23. More specifically and as set forth below, the relevant provisions of the Settlement Act signify the United States' obligation to minimize water use at NAS-Fallon, and to manage the unused water in a way that primarily benefits Pyramid Lake and its listed fishes.

24. The Settlement Act mandated a sequence of federal actions with respect to the use of irrigation water at NAS-Fallon to promote the Settlement Act's goals with respect to Pyramid Lake and to otherwise fulfill the United States' long-recognized Trust obligations to the Tribe.

25. First, the Navy and the DOI were required to undertake a study for the purpose of reducing the use of Newlands Project irrigation water rights at NAS-Fallon. Therefore, §§ 206(c)(1) of the Settlement Act mandates:

> Not later than one year after the date of enactment of this title, the Secretary of the Navy, in consultation with the Secretary [of the Interior], shall undertake a study to develop land management plans or measures . . . on those lands owned by the United States within [NAS-Fallon], in a manner that, to the extent practicable, reduce direct surface deliveries of water.

26. Second, the Settlement Act provides that the Navy "shall promptly select and implement land management plans or measures developed by the study . . . upon determining that water savings can be made without impairing the safety operations at [NAS-Fallon]." Settlement Act, § 206(c)(2).

27. Third, the Settlement Act requires the Secretary of the Interior to manage the water no longer used by the Navy at NAS-Fallon (hereafter the "Navy Water") primarily for the conservation of the Pyramid Lake fishery and consistent with the DOI's responsibilities under the Endangered Species Act. Therefore, § 206(c)(3)(A) of the Settlement Act mandates that:

> All water no longer used and water rights no longer exercised by the Secretary of the Navy shall be managed by the Secretary [of the Interior] for the benefit of fish and wildlife resources referenced in sections 206 and 207 of this title: Provided, That,
> (A) as may be required to fulfill the Secretary's responsibilities under the Endangered Species Act, as amended, the Secretary shall manage such water and water rights primarily for the conservation of the Pyramid Lake fishery and in a manner that is consistent with the Secretary's responsibilities under the Endangered Species Act….

And § 206(c)(6) further mandates that in carrying out these responsibilities, the Secretary "shall . . . fulfill the Federal trust obligation to the Pyramid Lake Tribe…."

**The DOI's Failure to Implement § 206(c)(3)(A) of the Settlement Act**

28. The 2000 National Defense Authorization Act (Congress's regular omnibus military spending bill) required the Navy to reduce its water use to only 4,402 acre-feet per year, which is enough to irrigate approximately 1,258 acres of land. And after further activity and water rights retirements mandated by law, the Navy transferred water rights from approximately 818 acres of land at NAS-Fallon (equivalent to 2,863 acre-feet of water annually from Lahontan Reservoir) to the United States Fish and Wildlife Service ("USFWS") in 2002.

29. Therefore, as of today, the United States has satisfied the Settlement Act's first two predicate requirements in §§ 206(c)(1) and (2) that the DOI and Navy undertake a water conservation study and thereafter implement water use reduction measures at NAS-Fallon.

30. Having satisfied §§ 206(c)(1) and (2), the DOI and the Secretary are now mandated by §§ 206(c)(3) to manage the Navy Water primarily for the benefit of Pyramid Lake and its imperiled fishery. However, they have entirely failed to manage the unused Navy Water primarily

for the benefit of Pyramid Lake and its listed species as mandated by § 206(c)(3)(A) of the Settlement Act.

31. DOI's and the Secretary's inaction comes at a significant cost to Pyramid Lake and its fishery. If used for the primary purpose required by the Settlement Act, the Navy Water could represent up to approximately 5,000 acre-feet of water per year flowing into Pyramid Lake through application of applicable rules governing the Newlands Project's diversions of Truckee River waters into the Truckee Canal.

32. Instead of managing the Navy Water primarily for the benefit of the Pyramid Lake fishery, DOI and the Secretary have taken other actions with respect to the Navy Water that run contrary to their Trust obligations to the Tribe and its resources as mandated by the Settlement Act.

33. Since the early 2000s, and until roughly 2020, DOI annually used the Navy Water at USFWS's Stillwater National Wildlife Refuge ("Stillwater-NWR"), pursuant to temporary water right transfer applications filed with the State of Nevada.

34. But on December 13, 2019, USFWS applied to the State of Nevada for a permanent transfer of the Navy Water to Stillwater-NWR, attempting to make permanent what had previously been only temporary uses of the Navy Water at Stillwater-NWR. The Tribe submitted a formal written protest of USFWS's 2019 application, after which USFWS withdrew the application in June 2021.

35. Then, on March 7, 2022, and without notifying the Tribe, USFWS filed a new permanent change application with the State of Nevada, which like its prior withdrawn 2019 application, seeks to make the previously temporary use of the Navy Water at Stillwater-NWR into a permanent use. Again, the Tribe submitted a formal written protest of USFWS's second permanent transfer application, urging that the Nevada State Engineer defer consideration of the application until after DOI has taken affirmative action with respect to managing the Navy Water primarily for Pyramid Lake's benefit as required by the Settlement Act.

36. As of the filing of this action, USFWS's 2022 application remains pending before the Nevada State Engineer.

37. Over the past two years, the Tribe has submitted written requests to DOI and the Secretary—on at least two occasions—requesting formal government-to-government consultation over DOI's failure to satisfy its Settlement Act obligation to manage the Navy Water primarily for the benefit of Pyramid Lake and its listed fishes.[1]

38. The Tribe has received no formal responses from DOI or the Secretary to its requests for government-to-government consultation, and is compelled to bring this action because DOI and the Secretary have and continue to fail to satisfy the Settlement Act's mandate that they manage the Navy Water primarily for the benefit of Pyramid Lake and its listed fishes.

**FIRST CLAIM FOR RELIEF**
**(Administrative Procedure Act, 5 U.S.C. § 706(1))**

39. The Tribe repeats, realleges, and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

40. The Administrative Procedure Act provides for judicial review of agency action that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

41. The DOI's and Secretary's duty to manage the Navy Water primarily for the benefit of Pyramid Lake and its endangered species is a mandatory and non-discretionary agency action.

42. Because the Navy completed the study and implemented the land management plan to conserve water at NAS-Fallon based on that study, all in satisfaction of Settlement Act §§ 206(c)(1) and (2), the Settlement Act now imposes a clear, certain, and mandatory duty on DOI and the Secretary with respect to the management of the Navy Water.

43. The Settlement Act vests management authority in DOI and the Secretary with respect to the Navy Water, and requires that "the Secretary shall manage such water and water rights primarily for the conservation of the Pyramid Lake fishery and in a manner which is consistent with the Secretary's responsibilities under the Endangered Species Act, as amended,

---

[1] True and correct copies of the Tribe's letters to DOI are attached hereto as **Exhibits 1** and **2**.

1  and the requirements of applicable operating criteria and procedures for the Newlands Project."
2  Settlement Act, § 206(c)(3)(A).

3  44. DOI and the Secretary have unreasonably delayed taking action to manage the
4  Navy Water primarily for the benefit of Pyramid Lake and its endangered species.

5  45. The Tribe therefore seeks an order and judgment from the Court: (a) declaring
6  Defendants DOI and Secretary Haaland have unreasonably withheld or delayed agency action, 5
7  U.S.C. § 706(1), with respect to the Settlement Act's requirement to manage the Navy Water
8  primarily for the benefit of Pyramid Lake; and (b) compelling Defendants DOI and Secretary
9  Haaland to satisfy their obligations under the Settlement Act to manage the Navy Water primarily
10 for the benefit of Pyramid Lake.

**SECOND CLAIM FOR RELIEF**
**(Breach of Trust)**

13 46. The Tribe repeats, realleges, and incorporates the allegations set forth in the
14 preceding paragraphs as if fully set forth herein.

15 47. The federal Indian Trust responsibility is a legal obligation under which the United
16 States "has charged itself with moral obligations of the highest responsibility and trust" toward
17 Indian tribes. *Seminole Nation v. U.S.*, 316 U.S. 286, 296–97 (1942) ("this Court has recognized
18 the distinctive obligation of trust incumbent upon the Government in its dealings with" Indian
19 tribes, and therefore "[i]ts conduct, as disclosed in the acts of those who represent it in dealings
20 with the Indians, should therefore be judged by the most exacting fiduciary standards.").
21 "[C]ertain obligations are so fundamental to the role of a trustee that the United States must be
22 held accountable for failing to conduct itself in a manner that meets the standard of a common
23 law trustee. This is so because elementary trust law, after all, confirms the commonsense
24 assumption that a fiduciary actually administering trust property may not allow it to fall into ruin
25 on his watch. One of the fundamental common-law duties of a trustee is to preserve and maintain
26 trust assets." Secretarial Order No. 3335 at 2 (Aug. 20, 2014) (quoting *U.S. v. White Mountain*
27 *Apache Tribe*, 537 U.S. 465, 475 (2003)) (internal citations omitted). "The special relationship
28 between Indians and the Federal government is the result of solemn obligations which have been

entered into by the United States Government ... [T]he special relationship ... continues to carry immense moral and legal force." *Id*. (quoting Public Papers of the President: Richard M. Nixon, Special Message on Indian Affairs (July 8, 1970)).

48. The Tribe has a long-recognized Trust relationship with the United States specifically with respect to DOI's and the Secretary's duty to preserve and protect the threatened and endangered Pyramid Lake fishery. *See Pyramid Lake Paiute Tribe of Indians v. Morton*, 354 F. Supp. 252 (D.D.C. 1972); *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1420 (9th Cir. 1990).

49. In *Tribe v. Morton*, the U.S. District Court for the District of Columbia recognized the Secretary of DOI has a fiduciary duty to "insure, to the extent of his power, that all water not obligated by court decree or contract with the District goes to Pyramid Lake." 354 F. Supp. at 256. "The vast body of case law which recognizes this trustee obligation is amply complemented by the detailed statutory scheme for Indian affairs set forth in Title 25 of the United States Code." *Id.* (citing 25 U.S.C. §§ 174 and 476; 44 U.S.C. § 614c). *Tribe v. Morton* further explained that "The Secretary's own regulations [governing the Newlands Project] recognize his trustee obligations." *Id.* at 256 n.4. Therefore, *Tribe v. Morton* instructs that "[u]ndertakings with the Indians are to be liberally construed to the benefit of the Indians, and the duty of the Secretary to do so is particularly apparent." *Id.*

50. Consistent with the foregoing, the Settlement Act expressly recognizes the United States' fiduciary Trust obligation to the Tribe. Settlement Act, § 206(c)(6) (Act's provisions must be carried out by the Navy and DOI to "fulfill the Federal trust obligation to the Pyramid Lake Tribe . . .").

51. One of the Settlement Act's overarching purposes is identified as ensuring DOI and the Secretary fulfill their Trust obligations to the Tribe and the Pyramid Lake fishery. Settlement Act, § 202(e)–(f) ("fulfill Federal trust obligations toward Indian tribes" and "fulfill the goals of the Endangered Species Act by promoting the enhancement and recovery of the Pyramid Lake fishery.").

52. Through the provisions of the Settlement Act, Congress unambiguously linked the United States' Trust obligation to the Tribe with the requirement that DOI and the Secretary manage the Navy Water primarily for the benefit of the Tribe. *See* Settlement Act § 206(c)(3)(A) ("the Secretary *shall manage such water and water rights primarily for the conservation of the Pyramid Lake fishery* and in a manner that is consistent with the Secretary's responsibilities under the Endangered Species Act") (emphasis added).

53. DOI and the Secretary have failed to fulfill this obligation, which constitutes a breach of Trust.

54. The Tribe therefore seeks an order and judgment from the Court: (a) declaring that Defendants DOI and Secretary Haaland's failure to comply with the Settlement Act's obligations constitutes a breach of their Trust obligations to the Tribe; and (b) compelling Defendants DOI and Secretary Haaland to satisfy their Trust obligations to the Tribe by managing the Navy Water primarily for the benefit of Pyramid Lake, as mandated by the Settlement Act.

**THIRD CLAIM FOR RELIEF**
**(Mandamus Act, 28 U.S.C § 1361)**

55. The Tribe repeats, realleges, and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

56. The Mandamus Act, 28 U.S.C. § 1361, provides United States District Courts with jurisdiction "to compel an officer or employee of the United States or agency thereof to perform a duty owed to the plaintiff…."

57. DOI and the Secretary have a duty to the Tribe under § 206(c)(3) of the Settlement Act to manage the Navy Water *primarily* to conserve the Pyramid Lake fishery and consistent with the requirements under the Endangered Species Act.

58. DOI's and the Secretary's duties under § 206(c)(3) of the Settlement Act to manage the Navy Water primarily to conserve the Pyramid Lake fishery are non-discretionary, ministerial, and are plainly prescribed.

59. DOI and the Secretary have failed to take any action to implement § 206(c)(3) of the Settlement Act's mandate to manage the Navy Water primarily for the benefit of Pyramid Lake and its listed species.

60. The Tribe's entitlement to relief is clear and certain.

61. The Tribe is presently without an adequate, alternative remedy at law, and therefore seeks relief pursuant to the Mandamus Act.

62. The Tribe seeks an order and judgment from the Court and pursuant to the Mandamus Act compelling Defendants DOI and the Secretary to satisfy their duties and obligations under § 206(c)(3) of the Settlement Act to manage the Navy Water primarily for the benefit of Pyramid Lake.

**FOURTH CLAIM FOR RELIEF**
**(Administrative Procedure Act, 5 U.S.C. § 706(2)(A))**

63. The Tribe repeats, realleges, and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

64. The Administrative Procedure Act provides the United States District Courts with jurisdiction to "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

65. Since approximately 2002 until 2019, the United States (through USFWS) affirmatively used the Navy Water on a temporary, annual basis at the Stillwater-NWR, an action that is contrary to the Settlement Act's requirement that the Navy Water be managed primarily for the Pyramid Lake fishery.

66. As described above, DOI (through USFWS) has now sought to permanently transfer the Navy Water to Stillwater-NWR through the filing of a permanent water rights transfer application (Application No. 91637) with the Nevada State Engineer, despite its failure to manage the Navy Water primarily for the benefit of Pyramid Lake and its listed fishery.

67. The Tribe has submitted a formal protest of DOI's application to the Nevada State Engineer, urging that the application be denied in light of the Settlement Act's directive that the Secretary must manage the Navy Water primarily for the benefit of Pyramid Lake and its fishery.

68. DOI's application remains pending before the Nevada State Engineer.

69. By taking these actions, DOI and the Secretary have failed to satisfy their obligations under the Settlement Act, which unambiguously prioritizes Pyramid Lake and its listed species with respect to DOI's and the Secretary's management of the Navy Water.

70. By filing the permanent water rights change application with the Nevada State Engineer, DOI and the Secretary have failed to satisfy their obligations to the Tribe to manage the Navy Water primarily for the benefit of Pyramid Lake and its listed species.

71. The Tribe seeks an order and judgment from the Court: (a) declaring that DOI's March 7, 2022 permanent water rights transfer application for the Navy Water (Application No. 91637) is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law under 5 U.S.C. § 706(2); (b) compelling DOI and the Secretary to withdraw Application No. 91637; and (c) compelling DOI and the Secretary to manage the Navy Water primarily for the benefit of Pyramid Lake and its listed species.

**PRAYER FOR RELIEF**

WHEREFORE, the Tribe respectfully requests that this Court enter judgment in its favor and against Defendants and prays as follows:

a. For a declaration that Defendants DOI and Secretary Haaland have unreasonably withheld or delayed agency action pursuant to 5 U.S.C. § 706(1) with respect to the Settlement Act's requirement to manage the Navy Water primarily for the benefit of Pyramid Lake;

b. For a declaration that Defendants DOI's and Secretary Haaland's failure to comply with the Settlement Act's obligations to manage the Navy Water primarily for the benefit of Pyramid Lake constitutes a breach of their Trust obligations to the Tribe;

c. For an order compelling Defendants DOI and Secretary Haaland to satisfy their obligations under the Settlement Act to manage the Navy Water primarily for the benefit of Pyramid Lake in consultation with the Pyramid Lake Paiute Tribe;

13

1        d.      For a declaration that DOI's and the Secretary's March 7, 2022 permanent water rights transfer application (Application No. 91637) to the Nevada State Engineer is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law under 5 U.S.C. § 706(2);

       e.      For an order requiring DOI and the Secretary to withdraw the March 7, 2022 permanent water rights transfer application (Application No. 91637);

       f.      For an award of reasonable attorneys' fees, costs, expenses, and disbursements associated with this action; and

       g.      For other and further relief as this Court may deem just and proper.

DATED this 12th day of July, 2023.

**KEMP JONES, LLP**

  /s/  *Christopher W. Mixson*
Don Springmeyer, Esq. (Nev. Bar #1021)
Christopher W. Mixson, Esq. (Nev. Bar. #10685)
Chad R. Aronson, Esq. (Nev. Bar #14471)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

*Attorneys for Plaintiff Pyramid Lake Paiute Tribe*